UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| The Toro Company, | Case No. 14-4463 (MJD/FLN) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Hunter Industries, Inc., | |
| Defendant. | |

Scott Johnston and Anthony Zeuli for Plaintiff.
Marko Zoretic and Katherine Rahlin for Defendant.

**THIS MATTER** came before the undersigned United States Magistrate Judge on April 17, 2015, on Defendant's motion to transfer venue (ECF No. 19). The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. Order, ECF No. 27. For the reasons set forth below, the Court recommends that Defendant's motion be **DENIED**.

## I. FINDINGS OF FACT

### A.   Procedural Background

On June 21, 2010, Plaintiff The Toro Company ("Toro") filed United States Trademark Application Serial No. 85/067,325 (the "'325 Application") for the mark PRECISION. Am. Compl. ¶ 15, ECF No. 17. The goods in the '325 Application are "irrigation equipment and components, namely, spray nozzles, rotating nozzles and soil moisture sensors for irrigating landscapes, lawns and gardens." *Id.* ¶ 25. Defendant Hunter Industries, Inc. ("Hunter") opposed Toro's '325 Application and petitioned the U.S. Patent and Trademark Office to reject the '325 Application (Opposition No. 91-203,612). *Id.* ¶ 17. By order dated March 31, 2014 (the "Order"), the Trademark

Trial and Appeal Board ("TTAB") denied a federal trademark registration for the mark PRECISION on the grounds that the trademark was likely to cause confusion with Hunter's PRECISION DISTRIBUTION CONTROL mark under Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d). *Id*. ¶¶ 5, 18. The TTAB subsequently denied Toro's request for reconsideration of the Order on August 29, 2014. *Id*. ¶ 20.

The present action is an appeal of the TTAB's decision pursuant to 15 U.S.C. § 1071(b)(1). Through this appeal, Toro seeks (1) to reverse the decision of the TTAB that denied registration of Toro's PRECISION mark; and (2) a declaratory judgment that Toro's PRECISION mark does not, and will not, create a likelihood of confusion with Hunter's PRECISION DISTRIBUTION CONTROL. *Id*. ¶¶ 1, 4, 50–57.

Hunter filed its Answer on February 17, 2015, asserting the following counterclaims against Toro: (1) false designation of origin under 15 U.S.C. § 1125(a); (2) California common law trademark infringement; (3) California statutory unfair competition under the California Business and Professions Code § 17200; and (4) California common law unfair competition. Answer and Countercls. ¶¶ 33–54, ECF No. 18. Hunter now moves to transfer this action from the United States District Court, District of Minnesota to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a). *See* Mot. to Transfer, ECF No. 19.

**B.     The Parties**

Hunter has been headquartered in San Marcos, California since 1981. Smith Decl. ¶ 3, ECF No. 23. Hunter and Toro are long-time competitors in the irrigation products market. *Id.* ¶ 5. Hunter has sold its PRECISION DISTRIBUTION CONTROL irrigation sprinklers to its distributor customers across the Unites States since 1992. *Id*. ¶ 6. These distributers have in turn sold these

products to retailers, landscape contractors, golf courses, cities, schools, and other government entities. *Id.* There are approximately seventy such distributor branches located in the Central District of California (230 statewide), and nine located in Minnesota. *Id.* Hunter employs four sales employees in the Central District of California (12 statewide), while only one is employed in Minnesota. *Id.* ¶¶ 7, 8.

Toro's corporate headquarters has been located in Bloomington, Minnesota since 1914. Brown Decl. ¶ 3, ECF No. 32. In addition to its operations in Minnesota, Toro operates facilities in California, Florida, Nebraska, New Jersey, Texas, and Wisconsin. *Id.* ¶ 4. According to Toro, employees who design, promote, and sell products or services bearing the PRECISION trademark are located in both California and Minnesota. *Id.* ¶¶ 5, 7.

## II. CONCLUSIONS OF LAW

### A. Legal Standard

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). However, district courts give "considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *In re Apple*, *Inc.*, 602 F.3d 909, 913 (8th Cir. 2010). When considering a motion to transfer, district courts weigh the following three general factors: "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). In order to satisfy the "heavy burden" of transfer, the moving party must demonstrate that the relevant factors weigh strongly in its favor. *See Cosmetic Warriors*, *Ltd. v. Abrahamson*, 723 F. Supp. 2d 1102, 1105 (D.

3

Minn. 2010).

## B.     Convenience of the Parties

Hunter argues that the convenience of the parties factor strongly favors transfer because it would be substantially more convenient for both Toro and Hunter to litigate this case in the Central District of California rather than the District of Minnesota. *See* Def.'s Mem. in Supp. of Mot. to Transfer 10–12, ECF No. 21. First, Hunter points to the fact that Toro's Irrigation Division Headquarters is located in Riverside, California, which is within the Central District of California. *Id*. at 10. Accordingly, Hunter argues that litigating in the Central District of California would be more convenient because all of the relevant documents and witnesses for this action are located in California. *Id*.; *see also* Def.'s Reply 2–8, ECF No. 37. Second, Hunter contends that the Central District of California is convenient for Toro because Toro has previously filed lawsuits in the Central District of California, including an action against Hunter. ECF No. 21 at 11. Lastly, Hunter asserts that the Central District of California is a much more convenient forum for Hunter because it maintains no offices in Minnesota, employs only one sales employee in Minnesota, and its relevant witnesses and documents are all located or accessible from its headquarters in San Marcos, California. *Id*. at 11–12.

In response, Toro claims that litigating in Minnesota is more convenient than California because Minnesota is the location where the PRECISION trademark at issue was selected, adopted, and used. *See* Pl.'s Mem. in Opp'n to Mot. to Transfer 7, ECF No. 29. Moreover, Toro asserts that the majority of its witnesses and records related to its PRECISION mark, including trademark files, business records, and employees, are located in Minnesota. *Id*. In addition, Toro argues that its past litigation in California is of no consequence to the Court's transfer analysis as those prior patent

lawsuits were litigated in California primarily for the convenience of the inventors involved—a factor not at issue in the present case. *Id.* at 8–9. Finally, Toro contends that Hunter will not be inconvenienced by litigating in Minnesota because Hunter regularly conducts business here, sells its products through nine distributors, and employs a full-time sales employee who is likely to be a witness in this case. *Id.* 10–11.

After reviewing the parties respective arguments, the Court concludes that a transfer to the Central District of California would merely shift the inconvenience of litigating this case from one party to the other. Litigating in California would be more convenient for Hunter because its relevant witnesses and records are located at their headquarters in San Marcos, California. On the other hand, litigating in Minnesota would be more convenient for Toro because it appears that many employees, records, and other documents relevant to the PRECISION trademark are located at Toro's corporate headquarters in Bloomington, Minnesota. "Merely shifting the inconvenience from one side to the other . . . is not a permissible justification for a change of venue." *Terra Int'l*, *Inc.*, 119 F.3d at 696–97. Accordingly, the Court concludes that the convenience of the parties factor weighs against transfer.

**C.      Convenience of the Witnesses**

When weighing the convenience of the witnesses factor, the Court "must examine the materiality and importance of the anticipated witnesses' testimony and then decide their accessibility and convenience to the forum." *Klatte v. Buckman*, *Buckman & Reid*, *Inc.*, 995 F. Supp. 2d 951, 955 (D. Minn. 2014). The focus is on non-party witnesses, because it can be assumed that witnesses within the control of the parties will appear voluntarily in a foreign forum. *Id.*

5

Here, a key factor in Toro's Complaint is whether Toro's PRECISION mark is likely to cause confusion in the marketplace. Accordingly, witnesses with knowledge of both Toro's PRECISION mark as well as Hunter's PRECISION DISTRIBUTION CONTROL mark will be crucial witnesses in this case. Hunter argues that they have identified two such non-party witnesses—Christine Canepa and Jeff Miller, former employees of Toro with marketing experience related to PRECISION brand irrigation products. *See* ECF No. 21 at 13. According to Hunter, both of these individuals work within the Central District of California and would be able to testify there, but are outside of the subpoena power of this Court. *Id.* at 13–14; *see also* Fed. R. Civ. P. 45(c). The presence of these two non-party witnesses in California weighs in favor of transfer.

In response, Toro has identified several potential non-party witnesses who reside in Minnesota. *See* ECF No. 29 at 12. However, Toro fails to explain the substance of the expected testimony of any of these witnesses, or the relevance of any such testimony with respect to Toro's likelihood of confusion claim. *See id.* Consequently, Toro's purported non-party witnesses are entitled to little weight in the analysis. *See Cosmetic Warriors*, 723 F. Supp. 2d at 1106 ("[T]he convenience analysis does not simply turn on the number of witnesses each side has identified, but rather hinges on the importance of their testimony.").

In addition to the potential non-party witnesses, Toro identified a list of eight Toro employees who are potential witnesses and live in Minnesota. *Id.* at 12–13. According to Toro, the majority of witnesses related to the selection, adoption, marketing, sales, and distribution of PRECISION products and services are located in Minnesota. *Id.* at 13. Toro argues that an employee named Peter Moeller is likely to be the key relevant witness in this case, and he currently works out of Toro's headquarters in Bloomington, Minnesota. *See* Moeller Decl. ¶¶ 4–5, ECF No. 48. Toro

considers Moeller to be the most knowledgeable person regarding Toro's first use of PRECISION as a trademark for irrigation sprinklers in the United States. *See* Zoretic Decl. Ex. 8 at 3, ECF No. 22; *see also* ECF No. 37 at 3.

While the Court agrees that these Toro employees, particularly Moeller, are likely to have information directly relevant to the issues in this case, they are party witnesses and are thus within the control of Toro. *See Klatte*, 995 F. Supp. 2d at 955 ("The focus [of the convenience of witnesses factor] is on non-party witnesses . . . ."). Even so, the Court acknowledges that it would be more convenient for these witnesses if the case were litigated in Minnesota. Nevertheless, given that the only two relevant non-party witnesses are located in California, the Court concludes that the convenience of the witnesses factor marginally favors transfer.

**D.     Interests of Justice**

When analyzing the interests of justice, courts consider: "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." *Terra Int'l, Inc.*, 119 F.3d at 696.

Hunter argues that the plaintiff's choice of forum, the comparative costs of litigating in each forum, and the advantages of a local court determining local law weigh in favor of transferring this case to California while the remaining factors are neutral. ECF No. 21 at 15–17. In contrast, Toro contends that these same three factors weigh in favor of retaining the case in Minnesota. ECF No. 29 at 16–18. While several of these factors are irrelevant in the present case, the Court concludes that, on balance, the relevant factors do not weigh in favor of transfer.

First, Toro's choice of forum is entitled to considerable deference and should not be set aside lightly. *See In re Apple*, *Inc.*, 602 F.3d at 913 ("[I]n general, federal courts give considerable deference to a plaintiff's choice of forum . . . ."). This deference is "based on an assumption that the plaintiff's choice will be a convenient one." *Id*. Hunter contends, however, that because the marks at issue were created and the relevant products designed, marketed, and sold in the Central District of California, any deference owed to Toro's choice of forum is outweighed by the inconvenience of Minnesota as a forum. ECF No. 21 at 16 (citing *Cosmetic Warriors*, *Ltd*., 723 F. Supp. 2d at 1108–1109 ("[I]t is generally appropriate to transfer an action to the district that is the locus of operative facts.")). The Court disagrees and concludes that Toro's choice of forum should not be set aside in this case. Minnesota is a convenient forum for Toro and various operative facts occurred in Minnesota, including the design, promotion, and sale of products bearing the PRECISION trademark. *See* ECF No. 29 at 16; *see also* ECF No. 32 ¶¶ 5–8. Accordingly, the Court concludes that the plaintiff's choice of forum factor weighs in favor of retaining the case in Minnesota.

Next, Hunter contends that both parties will save costs if this action is transferred to the Central District of California. ECF No. 21 at 16. As explained above, however, the Court finds that the comparative costs of litigating this case in either venue is essentially neutral, with a transfer of venue likely only serving to shift the inconvenience from one party to the other. *See supra* Part II.B. Such inconvenience shifting is an impermissible reason to permit a change of venue. *See Terra Int'l*, *Inc.*, 119 F.3d at 696–97. Consequently, the Court concludes that the comparative costs of litigation factor does not weigh in favor of transfer.

Finally, Hunter argues that because it has asserted counterclaims against Toro under California state law, the advantages of a local court determining local law weigh in favor of transfer.

8

ECF No. 21 at 17. However, the primary claims in Toro's Complaint arise under federal law—the Lanham Act, 15 U.S.C. § 1125(a). *See* ECF No. 17 ¶¶ 50–57. This undermines Hunter's assertion that a local court should decide its state law counterclaims. Indeed, federal district courts are "faced almost daily with the task of applying some state's law other than that of the forum state, and [they are] capable of resolving . . . dispute[s] under [another state's] law." *Hughes v. Wal-Mart Stores, Inc.*, 250 F.3d 618, 620 (8th Cir. 2001). Accordingly, the fact that Hunter raises counterclaims under California state law is of little weight and does not weigh in favor of transfer.

### III. CONCLUSION & RECOMMENDATION

In summary, although the convenience of the witnesses factor marginally favors transferring this case to the Central District of California, both the convenience of the parties factor and the interests of justice factor do not. On balance, therefore, the Court concludes that Hunter has not satisfied the "heavy" burden of demonstrating that a transfer of venue is warranted.

Based upon the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's motion to transfer venue be **DENIED**.

DATED: July 7, 2015             *s/Franklin L. Noel*
                                                    FRANKLIN L. NOEL
                                                    United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **July 22, 2015**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636

to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **July 22, 2015** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.